Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for Appellant Ignacio Medina-Nunez. I will try to reserve a few minutes of my time for rebuttal. Are you really going to make any more argument about the same issue? That was just going to get to that, that now that this Court has already heard, as Your Honor said very well, argued arguments by my colleague at the Federal Public Defender's Argument Office at the first issue, I'm going to turn my attention to Mr. Medina-Nunez's second argument, which is that his sentence is unreasonable under Booker. On appellate review, this Court first must consider whether the sentencing court committed no significant procedural error. One of the examples of significant procedural errors is basing a sentence on clearly erroneous facts. The appellate court then is required to consider the substantive reasonableness of the sentence, including taking into account the totality of the circumstances. Mr. Medina-Nunez contends that this Court did base its sentence on clearly erroneous facts and that his sentence was substantively unreasonable. Mr. Medina-Nunez is extremely rare in the context of illegal reentry defendants in that after he was deported, he actually moved to Mexico with his family, and his family, his wife and children, were living in Mexico. They were being supported in part by their in-laws and being supported by Mr. Medina-Nunez, who had found employment in Mexico. And the record is clear that the only reason he returned was because his father-in-law became seriously ill with cancer and ultimately passed away. The district court sentence was then based on clearly erroneous facts because the district court said Mr. Medina-Nunez returned to see his kids. In other words, the district court was ignoring the fact that Minister Medina-Nunez had established a life for his wife and his children in Mexico and was simply considering Mr. Medina-Nunez in the context of the general illegal reentry defendant who has his wife and his children here in the United States and will always be expected to return to be with them. Well, didn't the PSI say that the daughters were in the United States? That was at the time of sentencing, Your Honor. That was in 2007. Mr. Medina-Nunez returned because of the age. Didn't the PSI say that the daughters were in the United States? In 2007, they were in the United States. That was because Mr. Medina-Nunez had returned in 2004, and he had been incarcerated at the State level since 2004. Thus, when he had returned in 2004 and had been incarcerated in the State institutions for three years, his family had returned to be with the remainder of their family. They had gone to Mexico to be with Mr. Medina-Nunez, but since he had been ---- Was there any objection to what was said in the PSI? Well, I think the PSI was correct. In fact, at the time of sentencing, the family was there in the United States. But that was three years after Mr. Medina-Nunez had returned. Well, I understand. All I'm trying to do, you know, sometimes judges get on the bench, and they read certain things in their particular PSI, and then they give their sentencing configuration. And all I'm trying to say is, as I read the PSI, because I wanted to read to see what it said, it said that the daughters were in the United States. Now, the judge may have been wrong in what he said exactly, and then I have to find out whether, in fact, that fact was really what was underneath what the sentence meant or for what the sentence was given. So I look, first of all, to see if there is any basis for the judge to have said what he said. That's all I'm doing is questioning you on that. I understand, Your Honor. The next one you say that he had sporadic employment here. That's your next fact, right? Yes, Your Honor. But based on the record, that could be true, isn't it? Well, I don't think there was anything in the record that showed that his employment was sporadic. In fact, the record showed that Mr. Medina-Nunez had worked at his in-laws' market, and he had known his in-laws since 1992. So he had worked there. There was no evidence in the record that his employment there had been sporadic. And if I could, is Your Honor finished? Yeah, I'm finished. Oh, thank you. I didn't want to interrupt you. I did want to return a minute to your other point, whether there was any objection to the district court's interpretation that Mr. Medina-Nunez had returned to see his kids. No, I'm not talking about objection as to what he said. I'm talking about objection to what was in the PSI about that his daughters had been in the United States at a particular time. Well, I think there was no objection to the PSI because it was correct on its face. In 2007, when the PSI was prepared, the family was, in fact, in the United States. But Mr. Medina-Nunez submitted four letters, his own letter, his wife's letter, his brother's letter, and his brother-in-law's letter, and all of them said, in fact, after he had been deported, the entire family had moved to Mexico to be with Mr. Medina-Nunez. They had established a life for themselves. And all of them told the court the only reason he returned was because his father-in-law, with whom he was very close, who had been like a father to him, had been diagnosed with metastatic cancer and was not expected to live and ultimately did, in fact, pass away shortly after Mr. Medina-Nunez returned. The other area in which the defense contends the district court relied upon erroneous information was in the context of the need to afford adequate deterrence to criminal conduct and just punishment for the offense. Here, the district court said that prior sentences of three years, 360 days, and four years have not deterred Mr. Medina-Nunez from committing further crimes. And this was clearly erroneous because, in fact, Mr. Medina-Nunez had not committed any further crimes after the latter two sentences. However, you cannot say, based on this record, in this particular instance, that there isn't a pattern of convictions and probation and parole violations, can you? Well, in fact, Mr. Medina-Nunez, I felt, had a relatively low criminal history for someone who was placed in his criminal history category. He had only four offenses that were on the books, and they were relatively minor speaking. One was exhibiting a firearm in a moving vehicle. Another one was the terrorist threat, which was telling someone to shut up or I'll kick you, which, as we indicated in the brief, basically accounted for 71 months of the guideline range. I guess one's interpretation of whether there are a lot of convictions and probation and parole violations is kind of like my father always said, beauty's in the eye of the beholder. I mean, you've got to look at the record, and if the judge says something, and then somebody else says something else, I guess I'm trying to figure out what I thought the judge was trying to emphasize here was not the exact facts that he was looking for, but the pattern of convictions and probation and parole violations. That's what I thought the judge was trying to say, that this pattern had continued even though he'd gone to jails on several times, that the pattern did not end, that he continued to do things even though each time along the way under the criminal justice system, we had given him some kind of punishment for that. I understand what Your Honor is saying, but I think even that interpretation is not – is clearly wrong, it's based on the facts of this case. I mean, the judge was making specific comments with respect to three specific sentences that he said had not deterred Mr. Medina-Nunez. And in fact, after the latter two, he had not committed any further crimes. So it was only the first one they were talking about. And as I said, Mr. Medina-Nunez, in the context of someone who was placed in his criminal history category, I don't think had an excessive criminal record. He had four convictions, and they were not in the realm of things that serious. You know, I went into one of them was making a threat to someone that I would shut up or I'll kick you. Another one was exhibiting a firearm. Another one was more serious, selling drugs in jail. And then another one was obstruction of justice. And those were the only four convictions that were in his criminal history. So based on the fact that Mr. Medina-Nunez felt that one of the terrorist convictions that accounted for 71 months of the 77 months of his guideline range was, we're contending, was extremely, was certainly that did not merit that higher level of sentence. And overall, we contend that Mr. Medina-Nunez's sentence was not only based on clearly erroneous facts, but also substantively unreasonable. And I only see I only have a minute left. Does the Court want me to turn to the gang condition, or should I reserve my time for a vote? Kennedy, whichever you'd like. Okay. I'll turn briefly then to the gang condition. And we're talking about a gang condition which requires Mr. Medina-Nunez not to associate with anyone known to him to be a gang member or a person associated with a gang. And we admit that, and this Court has upheld the term associate as not being unduly vague because it interprets that as not meaning incidental comments. But when you've got two levels of association that Mr. Medina-Nunez is required to avoid, we contend that in that context it is abutting on serious First Amendment freedoms and is unduly vague and seriously restricts his liberty. So you think that the case of Saltero and its effect in what it said in Saltero as well as U.S. v. Ross, that what this Court said in this particular matter could not fit into those cases? Well, we did cite Saltero in our brief. Saltero does say that associate in this context is not unduly vague because it's been held to exclude incidental contacts. But as a defendant, as someone who's on the street associating with people, he has to know not only what does association mean, because I'm not sure that a not just a line saying incidental contacts or not association is a bright-line rule that someone necessarily knows when they're dealing with people in their normal lives what it means. But you have to not only not associate with people, with gang members, but not associate with people associated with the gang. So you have a term which, although it's been held not to be unduly vague, does have some degree of vagueness in it, and you double that term by using it twice in the same term. And for that reason, we feel that it does infringe on First Amendment freedoms.  Thank you. May it please the Court. Eric Silber appearing again on behalf of the United States. I think turning first to the three factual errors that are asserted here, I'll start with the first one the Order of Defense counsel went with, which is this idea that he came back for because his children were here. The problem with looking at that is that the court viewed it as an additional positive factor for the defendant that wasn't actually present. What the court said was this is a serious violation of immigration law, and this is at ER 16 to 17. He says he came back for these two reasons, because of the family member being ill and because his children are here, but he then committed other crimes. And the court says that's not something that weighs in his favor. What the court was saying was that this is a serious offense, although he had mitigating reasons. Given that he committed further crimes after coming back to the United States, it simply wasn't a mitigating factor here. The court did not, as defendants assert, view that this is a detriment to the defendant. It did not look at this as a reason why a defendant might not be deterred in the future. In fact, if the court had looked at it under that reason, it wouldn't have considered under the seriousness of the offense. It would have considered it under the other 3553A prongs, which deal specifically with those issues, which is deterrent and protecting the public and things like that. All the court was saying was this was a mitigating factor, but it wasn't giving weight to it because of the nature of the defendant's offense and the continuing criminal conduct. So I don't think it's fair to say that this was a material error of any kind here. Turning to employment, my reading of the PSR is exactly what the district court did here, which is that this is sporadic employment. There are three paragraphs of the PSR that deal with the employment. It's paragraphs 62 to 64. My reading of the PSR, looking at paragraph 52, which is defendant's age, is that from the time he turned 18, which was 1998, I believe, to 2004, the time he commits this crime, I see only two separate periods of seven months of employment. You have the 98 to 99 in which the defendant worked for seven months, and then you have the seven-month period from the time he was deported, which is covered by the PSR, which is paragraph 63, in which he apparently worked in Mexico as a telemarketer, and then when he returned, he worked at his in-laws' business. But that's what the PSR says. That's a seven-month period there and a seven-month period previously. Because the way the PSR is structured, I mean, defense counsel reads paragraph 62 as saying he always worked at the market, but that's not the way the PSR is structured. It's in reverse chronological order. It says he worked at the market before his arrest. Prior to that, when he was in Mexico, he worked as a telemarketer, and prior to that, his only work was 98 to 99 in the United States. So what this shows is two seven-month periods during an extended period of time. So I think it's fair to say it was sporadic. As to the third alleged factual error, the prior sentences and their effect as a deterrent, Judge Smith, as you indicated, the point was simply here that prior sentences hadn't deterred the defendant. That included both lenient sentences, which is probation for his first firearm conviction, and it also includes serious sentences, such as the three-year sentence for his second firearm conviction. And, in fact, the deterrence here was quite clear, the lack of prior deterrence, because, as the Court noted at page 16 of the extra record on page 18, he committed the last offense while in prison on the previous offense, which makes clear that there is no deterrent of value here. So, I mean, the point, the Court's point was simply that prior sentences hadn't deterred him, and I think that is accurate, however you look at it. I would respectfully disagree with defense counsels on the substantive reasonableness of this sentence with the view of the criminal record. And I think what's more important isn't whether I agree with it, it's how the district court looked at it, and the district court looked at it as serious, just as I do. What it looked at was, a defense counsel says, oh, well, the first conviction, it's exhibiting a firearm in a vehicle. But what the PSR indicates at paragraph 30 is that defendant got in an argument with an individual, chased him with a loaded firearm in the vehicle. I think the district court's entitled to view that as a serious offense. When you look at the criminal threat here, defendant says, oh, it was just a threat for someone, but it was a threat while displaying a firearm, and the court was entitled to view that as a serious offense. Once the defendant returns to the United States after the deportation, his next offense is both a gun and drug offense. The court was entitled to view that as serious. And the final offense, when he was in, it looks like pretrial detention on that, in jail, is yet another drug offense, which the court, as I said, emphasized was particularly serious because it happened in jail. What the court did was look at these offenses and say that this is a recidivist. These are serious offenses involving crimes of violence and drugs. And despite all of that, the court went 17 months below the guideline range here. So I just don't see a basis on this record to say that it is substantively or procedurally unreasonable. Turning to the gain condition, the condition here, particularly when you read it in light of Ross and Saltero, it's the same. It's a combination of the two conditions in Saltero and Ross. What the condition in Saltero said was the defendant shall not associate with any known member of any criminal street gang, specifically any known member of the Del High street gang. And I'm taking out the disruptive group part, which was stricken in reading that. What this court said in Ross, or what the condition was in Ross was you shall not associate with no neo-Nazi white supremacist members, no neo-Nazi white supremacist affiliates, and then it went on to describe other things. This is the combination of that. Here at Excerpt of Record 20, defendant may not associate with anyone known to him to be a gang member or a person associated with a gang. It takes the affiliate language, similar to the affiliate language you have in Ross when saying associated with a gang, and it takes the known gang member language from Saltero and Vega, frankly, as well, although the known was absent in Vega and this court read it in. The point of all of this is that the inclusion of the term known, the defendant has to know it's a gang member and has to know it's a person associated with a gang to have violated it, and that removes the vagueness problem. That's what this court indicated in Ross, and that's in part what this court made clear in Saltero. So at a minimum, I don't think the court can say it was plainly erroneous to have done that. I mean, the defendant didn't object to this provision, didn't say strike these provisions. Given the substantial similarity between Saltero and Ross, I think it's fair to say it's at least not plainly erroneous. The panel has no further questions. I'm happy to sit down. Thank you. Any rebuttal? I just wanted to touch on a few things. Mr. Silber said that the judge viewed the fact that he thought Mr. Nunez returned to be with his kids as a positive factor. But, in fact, as we discussed in the brief, it's a double-edged sword. It is mitigating, but it's also aggravating because judges feel that defendants who have their family here in the country are going to be returning again, and thus need to be deterred by higher sentences to prevent them from returning. Whereas in this case, it was undisputed that Mr. Medina Nunez did not intend to return. He had established a life for himself in Mexico and only returned because of the fatal illness of his father-in-law. And then with respect to Mr. Silber's comment about the seriousness of Mr. Medina Nunez's conviction for exhibiting a firearm, I wanted to point out that the State court only sentenced him to 10 days in jail for that sentence because they didn't view it as serious as Mr. Silber claims that it is. And with that, I'll submit, and thank you, Your Honor. It is the case, is it not, that your argument about the supervised release conditions, you first make that argument on appeal? Yes, that's right, Your Honor. All right. Thank you very much. Thank you. All right. Next, U.S. v. Amador Marcel Gonzalez, Mr. Tanaka and Mr. Silber.
judges: Pregerson, Hall, Smith